GLENN R. VAN IDERSTINE, an Infant, by NORMAN W. VAN IDERSTINE, His Father and Natural Guardian, et al., Appellants, v LANE PIPE CORPORATION et al., Defendants, and COUNTY OF ERIE, Respondent.

Fourth Department, November 9, 1982

APPEARANCES OF COUNSEL

*Paul William Beltz, P. C.* (*John Streb* and *Russell T. Quinlan* of counsel), for appellants.

*Jaeckle, Fleischmann & Mugel* (*Howard S. Rosenhoch* of counsel), for respondent.

OPINION OF THE COURT

SIMONS, J. P.

Plaintiffs, a father and his infant son, sue Erie County and others, seeking to recover for injuries sustained by the infant in a 1971 automobile accident. The accident occurred when the vehicle in which the infant was a passenger traveled off the highway and struck a guardrail. Alleging that the guardrail was defective, plaintiffs' complaint

states causes of action in negligence, strict products liability and breach of express and implied warranty. The county moved to dismiss the causes of action in strict products liability and warranty and Special Term, relying principally upon the policy considerations stated in *Weiss v Fote* (7 NY2d 579; see, also, *Tomassi v Town of Union,* 46 NY2d 91, 97) granted the motion (107 Misc 2d 981).

The claim arises from the allegedly defective performance by the county of a function which is quintessentially a governmental service — the construction and maintenance of a highway and the guardrails along it. Plaintiffs seek to cast this conduct in the form of a commercial transaction and thereby expose the county to liability determined by products liability rules, rules which permit recovery under far less stringent standards of culpability than the customary reasonable care standards of negligence. A traditional analysis of those rules establishes, however, that plaintiffs' second and third causes of action were properly dismissed by Special Term and its order should be affirmed. The strict liability cause of action fails because in erecting the guardrail the county did not design, manufacture or assemble a product and place it in the stream of commerce; it performed a service. The warranty cause of action fails because there was no sale between the parties. Erie County may indeed be liable for damages to plaintiffs because its culpable conduct, if such there was, contributed to the cause of this accident, but liability on the facts pleaded can be premised on negligence only. Although the parties seem to have some doubt on the matter, nothing that we said in *Rainbow v Elia Bldg. Co.* (49 AD2d 250) is to the contrary.

I

The doctrine of strict products liability renders the manufacturer of a defective product liable to any person injured thereby, regardless of privity, foreseeability or due care, if the defect was a substantial factor in bringing about the injury and provided (1) that at the time of the occurrence the product was being used for the purpose and in the manner normally intended, (2) that if the person injured is himself the user of the product he would not by the exercise of reasonable care have both discovered the defect and

perceived its danger and (3) that by the exercise of reasonable care the person injured would not otherwise have averted the injury (*Codling v Paglia,* 32 NY2d 330, 342; *Rainbow v Elia Bldg. Co.,* 79 AD2d 287, affd 56 NY2d 550; *Dudley Constr. v Drott Mfg. Co.,* 66 AD2d 368). The defect may result either from a mistake in manufacturing, from improper design or from the inadequacy or absence of warnings for the use of the product (*Robinson v Reed-Prentice Div. of Package Mach. Co.,* 49 NY2d 471, 478-479; *Opera v Hyva, Inc.,* 86 AD2d 373, 376-377).

The development of the strict products liability doctrine was an outgrowth of the contractual breach of warranty cause of action. As a tort concept it eliminated the constraint upon recovery imposed by warranty's privity requirement (*Martin v Dierck Equip. Co.,* 43 NY2d 583). The rationale was provided by the growth of modern commercial marketing. It necessitated the creation of a remedy which would protect persons who were not in privity with the manufacturer or seller of a defective product (see *Randy Knitwear v American Cyanamid Co.,* 11 NY2d 5, 12-13; see, also, 2C [Part 2], Warren, Negligence, ch 88, § 1.01). The courts found the change warranted because of the ever increasing complexity of modern products which often makes the manufacturer the only one "who can fairly be said to know and to understand when an article is suitably designed and safely made for its intended purpose" and because the economic burden resulting from the manufacture of defective products will ultimately fall on the manufacturer "who alone has the practical opportunity, as well as a considerable incentive, to turn out useful, attractive, but safe products" (*Codling v Paglia,* 32 NY2d, at pp 340, 341). The rule is intended to protect persons injured by defective products placed in the stream of commerce (see Restatement, Torts 2d, § 402 A, Comments *c, f*).

With that background, we turn to the parties' moving papers. They establish that in 1958 Erie County reconstructed Rice Road, a county highway and that the guardrail under consideration in this case was an incidental part of that work. It was designed by county engineers in connection with the reconstruction and assembled by county employees from parts purchased elsewhere. Mani-

festly, the guardrail was not the product of modern commercial marketing practices. There were no distant consumers of it who relied to their injury, on national advertising claims of its safety or reliability. Nor are those plaintiffs who may be injured by it faced with the difficult job of tracing responsibility for any incompetent workmanship in its making. The designer and assembler of the guardrail are known and at hand and their conduct can be examined and evaluated without difficulty. Furthermore, the second important predicate for strict products liability, risk distribution, is an inappropriate consideration when reviewing the performance of a governmental function, and particularly so when there is no mass production or commercial distribution of the "product" (for illustrations of governmental activity which could involve tort liability for defective products see *Gielskie v State of New York,* 9 NY2d 834 [State preparation and distribution of antitoxin]; *Lindenhauer v State of New York,* 45 AD2d 73 [State bottling and distribution of Saratoga vichy water]). Thus, there is no need for lesser standards of proof before permitting recovery in this case.

In sum, the county has not produced a product for sale and placed it in the stream of commerce and that being so, the action in strict products liability will not lie (see *Farina v Niagara Mohawk Power Corp.,* 81 AD2d 700; *Mastro v County of Schenectady,* 74 AD2d 976; *Yearke v Zarcone,* 57 AD2d 457, 462; see, also, Restatement, Torts 2d, § 402 A and Comments *c, f* thereto). That was the holding of an Illinois court in an analogous guardrail case, *Maddan v Cullinan & Son* (88 Ill App 3d 1029). In *Maddan,* the plaintiff contended that a partially constructed guardrail was a product for strict liability purposes. The court dismissed the claim, deciding first that since the guardrail had not been completed at the time of the accident, it had not left the contractor's control and entered the stream of commerce. It went on to state, however, that even if the guardrail had been completed, the result would be the same — plaintiff could not recover in a cause of action premised on strict products liability. Similar reasoning was applied to dismiss the strict liability claims in *Mastro v County of Schenectady (supra),* an action against the

county for personal injuries allegedly sustained as the result of the county's negligent design and construction of a parking lot (see, also, 1 Weinberger, NY Products Liability, § 2:12).

Another line of reasoning also sustains Special Term's holding. The strict products liability cause of action fails because the county's design and assembly of the guardrail was essentially the performance of a service as distinguished from the manufacture or sale of a product. That being so, products liability principles may not be applied (see *Perlmutter v Beth David Hosp.*, 308 NY 100; *Gobhai v KLM Royal Dutch Airlines*, 85 AD2d 566, affd 57 NY2d 839; *Probst v Albert Einstein Med. Center*, 82 AD2d 739; see, also, *Milau Assoc. v North Ave. Dev. Corp.*, 42 NY2d 482; see, generally, 1 Weinberger, NY Products Liability, § 3.01 *et seq.*). The service rationale was adopted by the court in *Fisher v Morrison Homes* (109 Cal App 3d 131), an action in which an infant was struck and killed by an automobile as he rode his bicycle from a pedestrian pathway onto an intersecting street. In summarily dismissing plaintiff's claim, the court stated that "[h]ighways, and by analogy, pathways, are not 'products' placed in the stream of commerce for profit, but are more akin to a service. Strict liability principles are therefore inapposite" (109 Cal App 3d, at p 138, n 2).

## II

Special Term also granted the county's motion to dismiss the breach of warranty action. In the amended complaint, plaintiffs had alleged that the county and others had "made certain expressed and implied warranties with respect to the condition of the road and of the merchantability of the guard rail, parts and appurtenances", that the plaintiffs and others relied on these warranties and that they were false. The warranty cause of action was properly dismissed because there was no sale between the parties (see *Farina v Niagara Mohawk Power Corp.*, 81 AD2d 700, 701, *supra; Marie v European Health Spas*, 79 AD2d 749, 750; 2C [Part 2], Warren, Negligence, ch 88, § 3.07[3]; see 1 NY PJI2d 126 [1982 Cum Supp]). Plaintiffs, citing no authority, contend that the payment of taxes to the county satisfies the technical sale requirement. To the contrary, in

*City of Rochester v Bloss* (185 NY 42) it was held that "[t]axes do not rest upon contract, express or implied. They are obligations imposed upon citizens to pay the expenses of government. They are forced contributions, and in no way dependent upon the will or contract, express or implied, of the persons taxed" (185 NY, at pp 47-48).

## III

Finally, as Special Term held, the causes of action should be dismissed because application of products liability rules cuts against policy considerations recognized in cases involving governmental tort liability.

To succeed in causes of action based upon strict products liability or warranty, plaintiff need prove only that he was injured by a defective product. By contrast, to succeed on a negligence theory involving a defective product, a plaintiff must prove an additional element, i.e., that the defect was due to defendant's lack of reasonable care in designing or constructing the product (*Rainbow v Elia Bldg. Co.,* 49 AD2d 250, 252, *supra*). It is well established, however, that a municipality is not an insurer of the safety of its roadways and that it is not liable for a defect in the work in the absence of negligence (*Tomassi v Town of Union,* 46 NY2d 91, 97, *supra; Sabino v City of New York,* 80 AD2d 800, 801; *Proctor v State of New York,* 67 AD2d 1051). Moreover, in *Weiss v Fote* (7 NY2d 579, *supra*) the Court of Appeals, directing its attention to the care required of municipalities in designing and planning roadways held that a governmental entity may not be held liable in tort on an ordinary negligence standard of reasonable care for lawfully authorized planning decisions, stating that "liability for injury arising out of the operation of a duly executed highway safety plan may only be predicated on proof that the plan either was evolved without adequate study or lacked a reasonable basis" (7 NY2d, at p 589, *supra*). Absent such proof, the wisdom of the government's plan may not be questioned nor may the exercise of its discretion give rise to liability in negligence (*Atkinson v County of Oneida,* 77 AD2d 257, 261; see, also, *Gutelle v City of New York,* 55 NY2d 794). This duty to study and plan differs from the "reasonably safe" standard of care applied in strict products liability actions involving design

defects. Proof of a strict products liability claim involving a design defect requires a factual finding of negligence (see *Rainbow v Elia Bldg. Co.,* 79 AD2d 287, 292-293, affd 56 NY2d 550, *supra*) whereas the *Weiss* rule contemplates that a municipality, having shown a reasonable basis for its design decisions, shall not be exposed to liability from a jury choosing which of two opposing views of reasonableness it prefers. Thus, although the amended complaint does not state whether the infant plaintiff's injuries were caused by defective construction or defective design of the guardrail, to allow the plaintiffs in this case to maintain these products liability causes of action under either theory would expose the county to damages upon a lesser standard of proof and be contrary to the law and policy concerns expressed in the *Tomassi* and *Weiss* decisions.

The order should be affirmed.

HANCOCK, JR., CALLAHAN, DENMAN and BOOMER, JJ., concur.

Order unanimously affirmed, without costs.